enUNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUAN CASTRO, JR.,<br><br>      Plaintiff,<br><br>   v.<br><br>SOVRAN SELF STORAGE, INC. t/a<br>UNCLE BOB'S SELF STORAGE,<br><br>      Defendant. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 14-6446<br>(JEI)<br><br>**OPINION** |

**APPEARANCES**:

LOCKS LAW FIRM, LLC
By:  Andrew P. Bell, Esq.
     James A. Barry, Esq.
     Michael A. Galpern, Esq.
801 N. Kings Highway
Cherry Hill, New Jersey 08034
     Counsel for Plaintiff

RILEY & SHAINE
By:  Charles N. Riley, Esq.
900 N. Kings Highway
Cherry Hill, New Jersey 08034-0379
     Counsel for Plaintiff

J. STEWART GRAD, ESQ.
223 Main Street
Woodbridge, New Jersey 07095
     Counsel for Plaintiff

PORZIO, BROMBERG & NEWMAN, PC
By:  Steven P. Benenson, Esq.
     John T. Chester, Esq.
100 Southgate Parkway
Morristown, New Jersey 07962-1997
     Counsel for Defendant

**IRENAS**, Senior District Judge:

This putative consumer class action appears before the Court on Defendant Sovran Self Storage's Motion to Partially Dismiss Plaintiff Juan Castro Jr.'s First Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).[1]  For the reasons below, the Motion will be granted in part and denied in part.

## I.   Relevant Facts

Plaintiff alleges the following facts in his First Amended Complaint, Dkt. No. 9 ("Am. Compl.").

Defendant operates more than two dozen storage facilities in the State of New Jersey.  (Am. Compl. ¶ 20)  At these facilities, Defendant "has offered, gave, displayed and entered into" three types of agreements with thousands of consumers, "which contain the same or substantially similar unenforceable provisions[.]"  (Id. ¶¶ 20-21)  First, on January 11, 2013, Defendant entered into a Rental Agreement (Am. Compl. Ex. A, Dkt. No. 9-1 ("Rental Agreement")) with Plaintiff agreeing to lease to Plaintiff a storage space for personal property for a monthly rent of $242.00.  (Am Compl. ¶ 23)  Second, also on January 11, 2013, Defendant required Plaintiff to sign a Rental

---

[1] No issues of class certification are addressed in this motion.

Insurance Addendum/Insurance Coverage Requirement (Am. Compl.
Ex. B, Dkt. No. 9-2 ("Insurance Addendum")) to obtain insurance
as a prerequisite of leasing storage space. (Id. ¶¶ 38, 40)
Third and finally, on July 2, 2014, Defendant required Plaintiff
to sign a Customer Vacate Notice (Am. Compl. Ex. C, Dkt. No. 9-3
("Notice to Vacate")) releasing Defendant from all liability
upon vacating the storage space. (Id. ¶¶ 71-72, 74)
Plaintiff's claims in this Complaint, a putative class action,
pertain to these three agreements.

The bulk of Plaintiff's Complaint challenges six provisions
in the Rental Agreement: (1) a Limitation of Value provision
capping the value of Plaintiff's stored property at $5,000
without "printing such declaration in bold face or underlined"
pursuant to N.J.S.A. § 2A:44-193(a) (id. ¶¶ 28-29); (2) an
Invalidity provision stating that if one or more provisions of
the Rental Agreement is deemed illegal or unenforceable, the
remainder of the Agreement remains in effect without specifying
which provisions are void or unenforceable, pursuant to N.J.S.A.
§ 56:12-16 (id. ¶¶ 34-35); (3) a Lien Sale Preparation Fee
provision pursuant to N.J.S.A. §§ 2A:44-189 and 2A:44-191 (Am.
Compl. ¶¶ 24-25); (4) an Exculpatory Clause barring Plaintiff
and his guests from bringing any personal injury or property
damage claims against Defendant, even if caused by Defendant's
"own negligence, gross negligence and/or intentional conduct"

3

(id. ¶¶ 26-27); (5) an Indemnification of Owner provision requiring that Plaintiff "hold Defendant harmless and indemnify Defendant for any personal injuries," even if caused by Defendant's "own negligence, gross negligence and/or intentional conduct" (id. ¶¶ 30-31); and (6) a Waiver of Jury Trial provision requiring that Plaintiff waive any rights to a jury trial on behalf of himself and third parties (id. ¶¶ 32-33).

With regard to the Insurance Addendum, Plaintiff makes three additional allegations.  He alleges that though an entity called Bader Insurance Company provided the actual insurance coverage, Defendant received a portion of Plaintiff's $21 monthly premium from January 2013 to July 2013, even though Defendant is not licensed either to "sell, solicit, or negotiate insurance" or to "accept a commission, service fee, brokerage or other valuable consideration for selling, soliciting or negotiating insurance" in New Jersey, in violation of N.J.S.A. §§ 17:22A-29 and 17:22A-41(b).  (Am. Compl. ¶¶ 41-47, 49-52)  Plaintiff also alleges that Defendant failed to provide Plaintiff with copies of the insurance contracts or with Certificates of Insurance, in contradiction with a statement in the Insurance Addendum that such documents will be provided and in violation of N.J.S.A. § 56:8-2.22.  (Id. ¶¶ 56-58)[2]  Finally,

---

[2] Plaintiff received a "Summary of Coverage" (Am. Compl. Ex. D, Dkt. No. 9-4) only when he filed his a claim in July 2014.

Plaintiff alleges that his property suffered at least $5000 of damage from water and mold while stored at Defendant's facility, which Defendant misrepresented his insurance would cover at the time Plaintiff purchased the insurance.  (Id. ¶¶ 60-61)[3]

According to Defendant's representations at the time of purchase, the insurance "purported[] to provide coverage to 'insure the Lessee's property against fire, smoke, explosion[,] windstorm and water damage,'" including mildew and mold.  (Am. Compl. ¶ 48 (quoting Insurance Addendum ¶ 1))  However, when Plaintiff filed a claim for his water and mold damages in July 2014, Bader Insurance denied the claim, informing him that his insurance covered only "accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam."  (Id. ¶¶ 63-65; see also Bader Denial Letter, Am. Compl. Ex. E, Dkt. No. 9-5)  Because "Defendant knew that the storage space rented to Plaintiff did not contain any water plumbing, systems or appliances," Plaintiff alleges that the protection Defendant sold him was "meaningless" and "did not comport or match with"

---

[3] Though Plaintiff asserts that his individual damage was caused in part by Defendant's negligence (id. ¶ 62), the instant Amended Complaint, a putative class action, does not allege negligence against Defendant on behalf of the Class, focusing instead on claims based on provisions in the Agreements.

the coverage Defendant represented was provided.  (Am. Compl. ¶¶ 66-67)

Third and finally, Plaintiff challenges the Notice to Vacate on grounds similar to the Rental Agreement, arguing that the Notice to Vacate "unconscionably misrepresents" that customers are barred from bringing a claim against Defendant for any personal injuries or property damage sustained at the storage facility; are required to hold Defendant harmless and indemnify Defendant for any personal injuries resulting from Defendant's negligence; and have waived a right to a jury trial. (Am. Compl. ¶ 75)

Plaintiff brings his claims on behalf of himself and all members of a putative Class, which includes two Subclasses, and one Sub-subclass.  The putative "Class" includes:

> All persons, who since August 19, 2008 (or such date as discovery may disclose) to whom form contracts, the preprinted portions of which were identical or substantially similar to the Agreement attached hereto as Exhibit A [the "Rental Agreement"], have been given, displayed, offered, signed and/or entered into, in New Jersey presented by or on behalf of Defendant or its agents.

(Am. Compl. ¶ 80)

The putative "Notice to Vacate Subclass," which is "subsumed within and/or a part of the Class" includes:

> All Class members to whom form agreements, the preprinted portions of which were identical or substantially similar to the Notice to Vacate, attached hereto as Exhibit C, have been given,

6

> displayed, offered, signed and/or entered into, in
> New Jersey presented by or on behalf of Defendant
> or its agents.

(Id. ¶ 83)

The putative "TCCWNA Insurance Subclass," which is also

"subsumed within and/or a part of the Class" includes:

> All Class members to whom form agreements, the
> preprinted portions of which were identical or
> substantially similar to the Insurance Addendum,
> attached hereto as Exhibit B, have been given,
> displayed, offered, signed and/or entered into, in
> New Jersey presented by or on behalf of Defendant
> or its agents.

(Id. ¶ 81)

Furthermore, "subsumed within and/or a part of the TCCWNA

Insurance Subclass" is a further divided putative "Insurance

Subclass," which consists of:

> All Class members who signed form agreements, the
> preprinted portions of which were identical or
> substantially similar to the Insurance Addendum,
> attached hereto as Exhibit B.

(Id. ¶ 82)

In addition to seeking monetary damages, Plaintiff seeks

declaratory and injunctive relief:

> a) Declaring that Defendant is estopped from
> requiring Plaintiff to indemnify and hold
> Defendant harmless (and pay Defendant's
> attorney's fees and costs) for losses resulting
> from the negligence of Defendant.
>
> b) Prohibiting Defendant from offering or issuing
> contracts containing illegal provisions, in the
> manner described herein.

      c)  Requiring Defendant to provide notice to all
class members that the aforesaid clauses
contained in the Agreement, Insurance Addendum
and Notice to Vacate issued to the Class and/or
subclass members are void and unenforceable and
that class members who signed such forms may
still sue Defendant in Court and recover
statutory attorneys fees and costs for
violations of consumer protection statutes.

      d)  Requiring Defendant to provide notice to all
Class and subclass members who may have
indemnified Defendant or who may have had
judgment entered against them pursuant to the
aforesaid contract provisions that such
indemnification or judgment is illegal and will
be refunded or vacated.

(Id. ¶ 101)

## II.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a
court may dismiss a complaint "for failure to state a claim upon
which relief can be granted."  In order to survive a motion to
dismiss, a complaint must allege facts that raise a right to
relief above the speculative level. *Bell Atlantic Corp. v.
Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P.
8(a)(2).

When considering a Rule 12(b)(6) motion, the reviewing
court must accept as true all allegations in the complaint and
view them in the light most favorable to the plaintiff.
*Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir.
2008).  In reviewing the allegations, a court is not required to

8

accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Instead, the complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Finally, the Court considers "only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). A document forms the basis of a claim when it is "integral to or explicitly relied upon in the complaint." *Id.* (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

### III. Jurisdiction

Plaintiff brings his Complaint as a putative class action. For such claims, this Court has jurisdiction over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs" and where "any member of a class of plaintiffs is a citizen of a State

different from any defendant." Fed. R. Civ. P. 1332(d)(2).
Here, Plaintiff, a citizen of New Jersey, alleges against
Defendant, a real estate investment trust incorporated under the
laws of Maryland with its principal place of business in New
York, an amount in controversy exceeding $5 million. (Am.
Compl. ¶¶ 2-5)

## IV. Discussion

Plaintiff brings his Amended Complaint pursuant to the
Truth in Consumer Contract, Warranty and Notice Act (N.J.S.A. §§
56:12-13, *et seq.*, ("TCCWNA")) and the New Jersey Consumer Fraud
Act (N.J.S.A. §§ 56:8-1, *et seq.*, ("CFA")). (Am. Compl. ¶¶ 91-
99) Defendant moves to partially dismiss for failure to state a
claim under these statutes.

### A. Truth in Consumer Contract, Warranty and Notice Act Claims

The TCCWNA provides in relevant part:

> No seller, lessor, creditor, lender or bailee shall
> in the course of his business offer to any consumer
> or prospective consumer or enter into any written
> consumer contract or give or display any written
> consumer warranty, notice or sign after the
> effective date of this act which includes any
> provision that violates any clearly established
> legal right of a consumer or responsibility of a
> seller, lessor, creditor, lender or bailee as
> established by State or Federal law at the time the
> offer is made or the consumer contract is signed or
> the warranty, notice or sign is given or displayed.

§ 56:12-15.

Plaintiff alleges that Defendant's Rental Agreement, Insurance Addendum, and Notice to Vacate violate the TCCWNA.

### a. Rental Agreement

Plaintiff's TCCWNA allegations regarding the Rental Agreement pertain to six provisions: the "Limitation of Value" provision, the "Invalidity" provision, the "Lien Sale Preparation Fee" provision, the "Indemnification of Owner" provision, the "Exculpatory Clause" of the Insurance provision, and the "Waiver of Jury Trial" provision.

### i. Limitation of Value Provision

N.J.S.A. § 2A:44-193(a) entitled "Rental agreements with limits upon value of stored property; remedies" provides in relevant part:

> If a rental agreement . . . contains a provision placing a limit on the value of property that may be stored in the occupant's space, this limit shall be deemed to be the maximum value of the stored property, provided that the provision is printed in bold type or underlined in the rental agreement.

Defendant's Limitation of Value provision states that "Customer agrees that the maximum value of all contents in the Space shall be $5,000.00." (Rental Agreement ¶ 6) Plaintiff alleges that Defendant improperly places this cap without "printing such declaration in bold face or underlined" in violation of § 2A:44-193(a). (Am. Compl. ¶¶ 28-29)

11

However, as Defendant points out, 2A:44-193(a) did not take effect until August 9, 2013, nearly seven months after Plaintiff executed his Rental Agreement with Defendant on January 11, 2013.  On the facts, Defendant also argues that though the relevant sentence, including the $5,000.00 total, is not emphasized in any way, "[t]he title of the short provision ['Limitation of Value'] is in bold, underlined text." (Def.'s Br. Supp. Mot. to Dismiss, Dkt. No. 13-1 ("DMTD") at 15) Plaintiff does not revisit this argument in his Opposition Brief and offers no alternate basis for a TCCWNA violation. Defendant's motion to dismiss Plaintiff's TCCWNA claim regarding the Limitation of Value provision will therefore be granted.

### ii. Invalidity Provision

Plaintiff alleges that Defendant's Invalidity provision improperly states that the finding of one or more provisions of the Rental Agreement illegal or unenforceable does not affect the remainder of the Agreement without specifying which provisions are void or unenforceable, in violation of N.J.S.A. § 56:12-16.  (Am. Compl. ¶¶ 34-35).

The TCCWNA states:

No consumer contract, notice or sign shall state that any of its provisions is or may be void, unenforceable or inapplicable *in some jurisdictions* without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey[.]

12

§ 56:12-16 (emphasis added).

"In other words, a contract or notice cannot simply state in a general, nonparticularized fashion that some of the provisions of the contract or notice may be void, inapplicable, or unenforceable in some states." *Shelton v. Restaurant.com, Inc.*, 214 N.J. 419, 427-28, 70 A.3d 544, 549 (2013). *See also Venditto v. Vivint, Inc.*, No. CIV.A. 14-4357 JLL, 2014 WL 5702901, at *9 (D.N.J. Nov. 5, 2014)(denying a motion to dismiss where clause at issue stated that "[s]ome states do not allow" certain limitations and exclusions, "so the above limitations or exclusions may not apply to you" without specifying which ones did or did not apply in New Jersey).

As Defendant argues, "[t]he reasonable interpretation of [§ 56:12-16] is that if a consumer contract, notice or sign is or may be used in multiple jurisdictions and expressly states that any of its provisions are or may be void, unenforceable or inapplicable in certain of those jurisdictions, it must specify where such provisions are or are not void, unenforceable or inapplicable in New Jersey." (Def.'s Reply Br. at 29)(emphasis omitted)

Here, Defendant's Invalidity provision reads as follows:

If one or more of the provisions of this Rental Agreement are deemed to be illegal or unenforceable the remainder of this Rental Agreement shall be unaffected and shall continue to be fully valid, binding and enforceable.

13

(Rental Agreement ¶ 24)

Plaintiff contends that the conditional phrase "If one or more of the provisions of this Rental Agreement are deemed to be illegal or unenforceable . . . " necessarily admits that provisions of the agreement "may be void, unenforceable or inapplicable." (Pl.'s Opp. at 25)  Therefore, Plaintiff alleges that this language triggers the requirement to specify which portions may be void or unenforceable under New Jersey law. (Am. Compl. ¶ 16.g)  Since the Rental Agreement fails to do so, Plaintiff asserts that it violates the TCCWNA.

Plaintiff relies for this reading on *Martinez-Santiago v. Public Storage*, 38 F.Supp.3d 500 (D.N.J. 2014).  However, the provision at issue in *Martinez-Santiago* clearly implicated § 56:12-16, because it referenced the agreement's application in multiple jurisdictions:

> Lease/Rental Agreements shall be governed and construed in accordance with the laws of the state in which the Premises are located.  If any provision of this Lease/Rental Agreement shall be invalid or prohibited under such law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of the Lease/Rental Agreement.

*Id.* at 511.

The facts here are readily distinguished.  Defendant's Rental Agreement is specific to New Jersey, and there is no

14

indication that the provision at issue contemplates the contract's application in multiple jurisdictions such that its enforceability in New Jersey must be clarified.  Rather, this Invalidity provision operates as a severability clause, protecting the remainder of the contract should some portion of it be declared void or unenforceable.  As Defendant points out, Plaintiff's interpretation of § 56:12-16 suggests that any standard severability clause implicates the statute.  (Def.'s Reply Br. at 30-31)  This reading ignores the context the phrase "in some jurisdictions" creates for the application of the statute and cannot be correct.  The Court therefore finds that § 56:12-16 does not govern the Invalidity provision of the Rental Agreement and will grant Defendant's motion to dismiss Plaintiff's TCCWNA claim as it relates to that provision.

### iii. Lien Sale Preparation Fee Provision

Next, Plaintiff alleges that Defendant's Lien Sale Preparation Fee provision imposes an improper fee to cover the costs of selling a customer's stored property to recover unpaid rent (or other expenses due), in violation of N.J.S.A. §§ 2A:44-189 and 2A:44-191.  (Am. Compl. ¶¶ 24-25)

The first of these statutes, entitled "Lien on personal property; priority" provides in relevant part:

> Except as specified in this subsection, the owner
> of a self-service storage facility . . . shall have
> a lien upon all personal property located at a self-

15

> service storage facility for rent, labor, or other
> reasonable charges due as specified in the rental
> agreement in relation to the personal property, and
> for expenses necessary for its preservation, or
> expenses reasonably incurred in its sale under this
> act.

§ 2A:44-189.

The second statute, § 2A:44-191, entitled "Satisfaction of lien," "sets out a notice-and-wait procedure, with which a self-storage facility must comply with [sic] before selling a tenant's property for the nonpayment of rent." *Gomes v. Extra Space Storage, Inc.*, No. CIV. 13-0929 KSH CLW, 2015 WL 1472263, at *7 (D.N.J. Mar. 31, 2015). The detailed procedure for satisfying "[a]n owner's lien for a claim which is more than 30 days overdue" requires that owners such as Defendant give notice to occupants such as Plaintiff prior to attempting to sell the property in satisfaction of the lien. § 2A:44-191(a)-(e). The procedure also governs the manner in which the sale will take place and provides that an occupant may recover the property, free of all liability, "[b]efore a sale of personal property" if he or she "pay[s] the amount necessary to satisfy the lien, and the reasonable expenses incurred by the owner to redeem the personal property." § 2A:44-191(i).

Neither statute forbids a lien sale preparation fee. Rather, § 2A:44-189 specifically authorizes a self-service storage facility owner to retain a lien upon stored property for

"reasonable charges due as specified in the rental agreement" and for "expenses reasonably incurred in its sale under this act." Moreover, § 2A:44-191 explicitly recognizes that an owner may incur expenses even before a sale or redemption, because it provides that "[b]efore a sale of personal property the occupant may pay the amount necessary to satisfy the lien, and the reasonable expenses incurred by the owner to redeem the personal property." (Def.'s Reply Br., Dkt. No. 19 at 11)

Here, however, Defendant's Lien Sale Preparation Fee provision states that "Customer shall pay a $115.00 lien sale preparation fee to Owner any time Customer's account is in continuous default for a period of THIRTY (30) days." (Rental Agreement ¶ 3) Plaintiff has not argued that this amount is not "reasonable" but objects that it is a flat "arbitrary" fee incurred as soon as a Customer is in default for 30 days, even before any lien-related expenses have actually occurred. (Pl.'s Opp. Br. at 13) Defendant acknowledged during oral argument that a customer who pays on Day 35, for example, before Defendant incurs any expenses, would nonetheless be responsible for the fee. (DMTD Hr'g Tr. 12, June 25, 2015, Dkt No. 23)

Section 2A:44-191 lays out a "strict" and unambiguous procedure by which an owner can secure satisfaction of a lien when an occupant's payment is more than 30 days overdue. *Gomes*, 2015 WL 1472263 at *11. Detailed instructions, which an Owner

17

must follow, govern the notice-and-wait period and any attempts to sell or redeem property in satisfaction of the lien. Significantly, "[t]he owner may satisfy his lien from the proceeds of the sale, but shall deposit the balance, if any, in an interest-bearing account with notice given to the occupant of the amount and place of the deposit and of his right to secure the funds[.]" 2A:44-191(k). The precision of these instructions suggest that the Owner is entitled to recover only its actual expenses and nothing more, weighing against assuming that the statute authorizes Defendant to collect a flat reimbursement fee where that fee exceeds the actual expenses incurred.

Defendant's motion to dismiss Plaintiff's TCCWNA claim based on Defendant's Lien Sale Preparation Fee provision will therefore be denied.

### iv. Indemnification Provision and Exculpatory Clause

Plaintiff alleges that Defendant's Indemnification of Owner provision improperly requires Plaintiff to "hold Defendant harmless and indemnify Defendant for any personal injuries," even if caused by Defendant's "own negligence, gross negligence and/or intentional conduct." (Am. Compl. ¶¶ 30-31) In addition, Plaintiff alleges that the Exculpatory Clause of Defendant's Insurance provision improperly bars Plaintiff and his guests from bringing any personal injury or property damage

18

claims against Defendant, even if caused by Defendant's "own negligence, gross negligence and/or intentional conduct." (Id. ¶¶ 26-27)

These allegations go to the heart of the TCCWNA. The Third Circuit has cited to "the Assembly Statement in support of the [TCCWNA's] passage" for a "list[ of] provisions that the Legislature considered to 'clearly violate the rights of consumers.'" *McGarvey v. Penske Auto Grp., Inc.*, 486 F. App'x 276, 280 (3d Cir. 2012) (*quoting* Statement, Bill No. A1660, 1981 N.J. Laws, Chapter 454, Assembly No. 1660, page 2-3).

> Examples of such provisions are those that deceptively claim that a seller or lessor is not responsible for any damages caused to a consumer, even when such damages are the result of the seller's or lessor's negligence. These provisions provide that the consumer assumes all risks and responsibilities, and even agrees to defend, indemnify and hold harmless the seller from all liability.

*Id.* at 280 n. 5.

Defendant's Indemnity provision here states in relevant part:

> Customer will defend, indemnify and hold the Owner harmless from and against any and all manner of claims for damages or lost property or personal injury and costs including attorney's fees arising from Customer's lease of the Space on the premises or from any activity work or thing done, permitted or suffered by Customer in or on the Space or about the premises.

(Rental Agreement ¶ 20)

19

The Insurance provision states:

> Customer expressly releases Owner from any losses,
> claims, suits and/or damages or right of
> subrogation caused by fire, theft, burglary, water,
> rain storms, tornado, explosion, riot, rodents,
> civil disturbance, government action, insects,
> mildew, mold, black mold, dust, sonic boom,
> vehicles, unlawful entry or any other cause
> whatsoever whether property is stored in an
> enclosed or open storage Space, nor shall Owner be
> liable to Customer and/or Customer's guests for any
> personal injuries or property damage sustained by
> Customer and/or Customer's guests while on or about
> the Space or the self storage facility at the Store
> Location.

(Id. ¶ 4)

Defendant argues that these provisions do not violate the
TCCWNA, because they do not state a violation of a clearly
established right and because, in any case, to whatever extent
they overstate Defendant's release from liability, no court
would enforce them so broadly. Neither argument is persuasive.

First, Chief Judge Simandle found in *Martinez-Santiago*,
cited *supra* at 14, that plaintiff adequately stated a violation
of a clearly established right on the basis of provisions
similar to Defendant's: at the time plaintiff signed her
agreement with defendant storage facility, it was clearly
established "under the common law," that defendant "has a duty
to guard against any known dangerous conditions on its property

20

or conditions that should have been discovered." 38 F.Supp.3d at 514.[4]

In reaching this conclusion, the *Martinez-Santiago* Court distinguished its facts from those in *Kane v. U-Haul Int'l, Inc.*, 218 Fed. App'x 163 (3d Cir. 2007). *Kane* noted that exculpatory clauses are disfavored but upheld the one at issue, because although the clause released defendant from liability for property damage, plaintiff Kane was given "the opportunity to elect [property] insurance for an additional reasonable fee," thereby mitigating any negative effect on the public interest. 218 Fed. App'x at 166. As *Martinez-Santiago* distinguished, "*Kane* concerned damage to property, not personal injury on the business premises. No insurance was offered to [Martinez-Santiago] for personal injury in this case, and therefore *Kane* is inapposite on these facts." 38 F.Supp.3d at 513.[5]

Here, as in *Martinez-Santiago*, Defendant's provisions broadly release Defendant from liability "for any personal injuries or property damage sustained by Customer and/or

---

[4] "Businesses are in the best position to maintain their premises for the safe use of customers, and enforcing the exculpatory provision would give Public Storage permission to be careless — negligent, reckless — in the maintenance of its property." *Id.*

[5] In *Martinez-Santiago*, plaintiff's guest had slipped on a patch of ice in front of the defendant storage facility and injured himself. *Id. at* 504. When plaintiff's guest brought suit against the defendant storage facility, defendant sought indemnification from plaintiff. *Id.*

Customer's guests while on" Defendant's property and provide for indemnification for "any and all manner of claims for damages or lost property or personal injury[.]" (Rental Agreement ¶¶ 4, 20)[6]  Moreover, Plaintiff was given no opportunity to elect insurance for personal injuries.  Consequently, *Kane* is inapposite on the facts, and Plaintiff has stated a violation of a clearly established legal right.[7]

Second, Defendant argues essentially that a provision that would not be enforced by a court cannot form the basis for a TCCWNA violation.  (DMTD at 16)  In New Jersey, "a contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is

---

[6] It is of no importance to Plaintiff's TCCWNA claim that his actual damages relate to his property and not to any claims of personal injury.  A plaintiff "sufficiently state[s] a [TCCWNA] claim, even in the absence of actual damages" where he is "able to show that [the provision at issue] violated a clearly established legal right[.]"  *McGarvey*, 486 Fed.Appx. at 278.

[7] The broadness of the language in Defendant's exculpatory clause also distinguishes this case from two others that upheld exculpatory clauses: *Stelluti v. Casapenn Enterprises, LLC*, 203 N.J. 286 (2010) and *Sauro v. L.A. Fitness Int'l, LLC*, No. CIV. 12-3682 JBS/AMD, 2013 WL 978807 (D.N.J. Feb. 13, 2013).  In *Stelluti*, the New Jersey Supreme Court upheld an exculpatory clause on the grounds that participants in sports activity "assume some risk because injury is a common and inherent aspect of the activity."  *Stelluti*, 203 N.J. at 307.  In *Sauro*, the district court upheld an exculpatory clause because the waiver of liability released defendant "from liability 'for any loss or damage . . . to the fullest extent by law,'" permitting the agreement to be only 'as broad and inclusive as is permitted by the law of the State of New Jersey.'"  *Sauro*, 2013 WL 978807 at *7.  Here, the use of a storage facility is not an inherently dangerous activity in which a customer assumes risk of personal injury, nor does Defendant's exculpatory clause contain any language limiting a customer's waiver of liability to only the extent permitted by law.  *See Martinez-Santiago*, 38 F.Supp.3d at 514-15.  Instead, the language is broad, precluding liability "for *any* personal injuries or property damage sustained by Customer and/or Customer's guests" while on Defendant's premises (emphasis added).

22

expressed in unequivocal terms," *Ramos v. Browning Ferris Indus.*
*of S. Jersey, Inc.*, 103 N.J. 177, 191 (1986)(citations omitted),
and Defendant's provisions here express no such intention.
Consequently, Defendant's Indemnity and Insurance provisions
would likely not be construed to preclude a personal injury
negligence claim.

However, TCCWNA claims are not directed toward the actual
construction or enforceability of a given provision but rather
the misleading effect such a provision may have on a potential
plaintiff prior to litigation, discouraging otherwise viable
suits by falsely suggesting the law precludes them.
Accordingly, *Martinez-Santiago* rejected an argument similar to
Defendant's, emphasizing that "[a]lthough . . . [the] broad
exculpatory provision [at issue] is not permitted under New
Jersey law, it purports to be enforceable in the lease
agreement" and therefore is "the kind of provision that TCCWNA
was designed to address."  38 F. Supp. 3d at 515.  Here,
Defendant's Indemnity of Owner provision and Exculpatory Clause
discourage suits, whether or not the provisions are enforceable,
and therefore fall directly within the TCCWNA's ambit.

Because a plaintiff's right to bring a personal injury suit
based on premises liability is clearly established, and
Defendant's Indemnification and Insurance provisions purport to
preclude such a suit in violation of that right, Defendant's

23

motion to dismiss Plaintiff's TCCWNA claim will be denied as it
pertains to these two provisions.

### v. Waiver of Jury Trial Provision

Finally, Plaintiff alleges that Defendant's Waiver of Jury
Trial provision improperly requires Plaintiff, on behalf of
himself and third parties, to waive any rights to a jury trial.
(Id. ¶¶ 32-33)  The provision reads:

> Owner and Customer waive their respective rights to
> trial by jury of any action at law or equity brought
> by either Owner against Customer or Customer
> against Owner or Owner's agents or employees,
> arising out of, or in any way connected to, this
> Rental Agreement, Customer's use of the Space or
> premises.  The waiver applies to any claim for
> bodily injury, loss of or damage to property, or
> the enforcement of any remedy under any law,
> statute or regulation.  This jury trial waiver is
> also made by Customer on behalf of any of Customer's
> agents, guests or invitees.

(Rental Agreement ¶ 21)

Plaintiff brings his TCCWNA claim with regard to the last
sentence of the Waiver of Jury Trial provision in particular,
which waives a jury trial "on behalf of any of Customer's
agents, guests or invitees."  A right to a trial by jury is
clearly established, but it is equally established that
Plaintiff may waive that right for himself by agreement.
*Johnson v. Wynn's Extended Care, Inc.*, 2014 WL 5292318, at *6
(D.N.J. Oct. 15, 2014)(rejecting Consumer Fraud Act claim based
on consumer contract provision extinguishing right to jury trial

24

because "a party can voluntarily waive its rights to a jury trial")(citation omitted).  It is less clear when Plaintiff may waive a jury right on behalf of third parties.  *See Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 225 (3d Cir. 2007)(finding that contracting party did waive jury trial rights for third party agents but distinguishing *Paracor Fin. Inc. v. Gen. Elec. Capital Corp.,* 96 F.3d 1151 (9th Cir. 1996) in which third parties were not agents of the contracting party).

In any case, there is no clearly established right that is violated by the waiver of a jury trial on behalf of third parties.[8]  Defendant's provision therefore does not implicate the TCCWNA, and the Court will grant its motion to dismiss Plaintiff's TCCWNA claim based on this provision.

**b. Insurance Addendum**

On January 11, 2013, in addition to the Rental Agreement, Defendant allegedly required Plaintiff to sign an Insurance Addendum to obtain insurance as a prerequisite of leasing storage space.  (Am. Compl. ¶¶ 38, 40)  Plaintiff raises several

---

[8] The Court also recognizes that while the TCCWNA seeks to counter misleading provisions that discourage plaintiffs from bringing suits that would otherwise raise viable complaints, there is no indication that an unenforceable waiver of a jury trial would have that effect.  Unlike Defendant's Indemnification and Insurance provisions, which may lead plaintiffs to erroneously believe they are barred from bringing suit altogether, Defendant's Waiver of Jury Trial provision is unlikely to preclude potential plaintiffs from consulting with an attorney.  Such plaintiffs may then either challenge the waiver's enforceability or proceed with their suit without a jury.

allegations with regard to this agreement, but Defendant moves
to dismiss only the claim that Defendant received a portion of
Plaintiff's monthly premium without proper licensing, in
violation of the Insurance Producer Licensing Act ("IPLA"),
codified in relevant part at §§ 17:22A-29[9] and 17:22A-41(b).[10]

Plaintiff asserts that Defendant is not licensed to "sell,
solicit, or negotiate insurance" or to "accept a commission,
service fee, brokerage or other valuable consideration for
selling, soliciting or negotiating insurance" in New Jersey, as
IPLA requires.  (Id. ¶¶ 41-47, 49-52)  Defendant moves to
dismiss on the grounds that Defendant *is* in fact properly
licensed, and even if it were not, that IPLA provides Plaintiff
no private right of action.  (DMTD at 32-33)

Defendant's first argument rests on a factual question.
Defendant asserts that Sovran Acquisition LP, the manager and
owner of the entity that owns the facility used by Plaintiff,
"holds a limited lines license to sell, solicit or negotiate
insurance for personal property in self-storage facilities from
New Jersey's Department of Banking and Insurance."  (DMTD at 32)

---

[9] N.J.S.A. § 17:22A-29 provides: "A person shall not sell, solicit or
negotiate insurance in this State unless the person is licensed for that line
of authority in accordance with this act."

[10] N.J.S.A. § 17:22A-41(b) provides: "A person shall not accept a commission,
service fee, brokerage or other valuable consideration for selling,
soliciting or negotiating insurance in this State if that person is required
to be licensed under this act and is not so licensed."

26

However, Plaintiff questions the relationship between Sovran
Acquisition LP and Defendant as well as whether the scope of
that entity's "*limited* lines license" covers the type of premium
Defendant allegedly collected from Plaintiff.  (Pl.'s Opp. Br.
at 26-27 (emphasis in original))  These factual questions are
inappropriate at this stage of litigation.[11]  The Court therefore
limits its analysis of this claim to Defendant's second argument
only.

In its second argument, Defendant asserts that IPLA affords
Plaintiff no private right of action.  (DMTD at 33)  "The New
Jersey Supreme Court has concluded that there is no private
right of action under IPLA."  *Ensey v. Gov't Employers Ins. Co.*,
No. CIV.A. 12-07669 JEI, 2013 WL 5963113, at *4 (D.N.J. Nov. 7,
2013) *reconsideration denied,* No. CIV.A. 12-07669 JEI, 2014 WL
941359 (D.N.J. Mar. 11, 2014)(*citing Lemelledo v. Beneficial
Management Corp. of America,* 150 N.J. 255, 272 (1997) ("The IPLA
concerns the licensing of insurance agents.  It vests the
Department of Banking and Insurance with power to revoke or to
refuse to renew a license and to impose civil penalties on
licensees who violate any provision of the statute or who engage

---

[11] Defendant suggests that the question of Sovran Acquisition LP's
relationship with Defendant may be resolved by examining the exhibits to
Plaintiff's Complaint but does not address the scope of the limited lines
license.  (DMTD at 33-34)

in any type of fraudulent activity in the sale of insurance.  It does not create a private cause of action.")).

Plaintiff argues that the TCCWNA allows a plaintiff to bring suit against a seller for a contractual "provision that violates any clearly established legal right of a consumer or responsibility of a seller." N.J.S.A. § 56:12-15. Specifically, § 56:12-17 provides:

> Any person who violates the provisions of this act shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs.

Plaintiff alleges that Defendant's contractual provision requiring a portion of Plaintiff's insurance premium without the appropriate license violates the TCCWNA, because it violates the responsibility of a seller – specifically, Defendant's responsibility to comply with IPLA's licensing requirements. However, as Defendant replies, "courts have prohibited the use of New Jersey's consumer protection statutes to pursue the backdoor enforcement of IPLA."  (DMTD at 34 (*citing Henderson v. Hertz Corp.*, 2005 WL 4127090, at *5 (N.J. Super. App. Div. June 22, 2006)(dismissing CFA claim based on IPLA violation since IPLA enforcement is "for the Commissioner")).

28

Defendant's motion to dismiss Plaintiff's TCCWNA claim relating to the Insurance Addendum, insofar as it is premised on an IPLA violation, will therefore be granted.

### c. Notice to Vacate

Finally, on July 2, 2014, Plaintiff asserts that Defendant required Plaintiff to sign a Notice to Vacate releasing Defendant from all liability upon vacating the storage space. (Am. Compl. ¶¶ 71-72, 74-75)  The Notice to Vacate also "unconscionably misrepresents" that Plaintiff is barred from bringing a claim against Defendant for any personal injuries or property damage sustained at the storage facility, that Plaintiff is required to hold Defendant harmless and indemnify Defendant for any personal injuries resulting from Defendant's negligence, and that Plaintiff has waived a right to a jury trial on behalf of himself and third parties who never signed the agreement.  (Id. ¶ 75)

For the same reasons that apply to the Exculpatory Clause and the Indemnity of Owner provision of the Rental Agreement, the Court will deny Defendant's motion to dismiss Plaintiff's claims regarding the provisions that attempt to bar Plaintiff from bringing personal injury or property damage suits or to require Plaintiff to indemnify Defendant for suits resulting from Defendant's negligence.  For the same reasons that apply to the Waiver of Jury Trial provision of the Rental Agreement, the

29

Court will grant Defendant's motion to dismiss Plaintiff's claims regarding the waiver of a right to a jury in the Insurance Addendum.

**B. New Jersey Consumer Fraud Act Claims**

The CFA provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice

N.J.S.A. § 56:8-2.

The CFA "has been repeatedly recognized to be remedial legislation which should be construed liberally." *International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 377 (2007).  To state a claim under the CFA, plaintiff must allege sufficient facts to demonstrate: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss.  *Id.* at 389-391.  "[The] CFA does not require proof that a consumer has actually relied on a prohibited act in order to recover.  In place of the traditional reliance element of fraud and misrepresentation, we have required that plaintiffs

30

demonstrate that they have sustained an ascertainable loss."
*Id.* at 391.[12]

Here, Plaintiff states that Defendant violated the CFA when
Defendant allegedly received insurance premiums without proper
licensing; sold insurance that purported to cover losses that
were actually excluded; and failed to provide insurance
contracts or Certificates of Insurance as required by § 56:8-
2.22. (Am. Compl. ¶ 17) Defendant moves to dismiss Plaintiff's
CFA count on the same grounds it moves to dismiss Plaintiff's
TCCWNA claims, addressed above, but also because Plaintiff
"cannot show any ascertainable loss" as the CFA requires. (DMTD
at 36) Moreover, Defendant argues that Plaintiff cannot show
that his alleged loss — property damage of at least $5,000 and
insurance premium payments of at least $126 (Am. Compl. ¶¶ 75-

---

[12] Fed. R. Civ. P. 9(b), which "imposes a heightened pleading requirement for
allegations of fraud, including CFA claims, over and above that required by
Rule 8(a)," does require that "in all averments of fraud or mistake, the
circumstances constituting the fraud or mistake shall be stated with
particularity." *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 435 (D.N.J.
2012) Plaintiff must "state the circumstances of the alleged fraud with
sufficient particularity to place the defendant on notice of the precise
misconduct with which it is charged," meaning that plaintiff must "plead or
allege the date, time, and place of the alleged fraud or otherwise inject
precision or some measure of substantiation into a fraud allegation."
*Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)(internal quotation
and citation omitted). "Plaintiff must also allege who made the
misrepresentation to whom and the general content of the misrepresentation."
*Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) (internal citation
omitted). Here, Plaintiff has satisfied this heightened pleading standard by
precisely identifying which provisions of which agreements contain the
misrepresentations he alleges caused his harm.

79) — "were or could have been caused by the subject provisions in the documents."  (DMTD at 36)

The "low threshold for determining the existence of an ascertainable loss" is "broadly defined as embracing more than a monetary loss.  An ascertainable loss occurs when a consumer receives less than what was promised."  *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 244 (2005)(internal quotation marks and citations omitted).  Here, Plaintiff alleges that he paid $126 of premiums for insurance that promised to cover water damage, including the kind of mold and mildew that ultimately damaged his property.  (Id. ¶¶ 61, 64, 78)  Instead of such coverage, however, he received coverage so limited as to be "meaningless" given the purpose for which he purchased it.  (Id. ¶¶ 65-66)  Further, Plaintiff alleges that the agreements at issue contain the misrepresentations that induced him to make this purchase, and if he had "been provided with copies of the insurance contracts and/or Certificate of Insurance as represented would be done in the Insurance Addendum," he "would not have purchased such insurance or paid the premiums list [sic] on the Insurance Addendum."  (Id. ¶ 59)

Based on these allegations, Plaintiff has stated an ascertainable loss caused by Defendant's alleged unlawful conduct.  Defendant's motion to dismiss Plaintiff's CFA claim based on the alleged misrepresentations regarding the scope of

insurance coverage and the failure to provide insurance contracts or a Certificate of Insurance will therefore be denied.

Defendant also moves to dismiss Plaintiff's CFA claim insofar as it is premised on Defendant's alleged IPLA violation. As already discussed with regard to Plaintiff's TCCWNA claims (*supra*, at 28-29), IPLA provides no private cause of action and the consumer fraud statutes cannot provide a "backdoor" to do so.  Accordingly, Defendant's motion to dismiss Plaintiff's CFA claims based on an IPLA violation will be granted.

## VI. Conclusion

For the reasons set forth above, Defendant's motion will be granted in part and denied in part.  An appropriate Order accompanies this Opinion.

Date: July 16, 2015

                          s/ Joseph E. Irenas
                    **JOSEPH E. IRENAS, S.U.S.D.J.**